IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | CRIM. NO. JKB-19-0036 |
| CORREY CAWTHORN, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Currently pending before the Court is Defendant Devin Mitchell's Motion to Join and Adopt Motion to Suppress All Direct and Derivative Evidence Seized Pursuant to a Search Warrant for Two Instagram Accounts ("Mitchell's Motion"). (ECF No. 1099.) Mitchell seeks to join Zeno Burnette's[1] Motion to Suppress All Direct and Derivative Evidence Seized Pursuant to a Search Warrant for Two Instagram Accounts Attributed to Mr. Burnette ("Burnette's Motion") (ECF No. 890) and seeks the suppression of evidence seized from an Instagram account. Mitchell's Motion will be granted as to its request to join Burnette's Motion and will be denied as to its request to suppress evidence.

### I. Factual Background

Mitchell is charged in the Fourth Superseding Indictment with conspiracy to participate in a racketeering enterprise, conspiracy to distribute and possess with intent to distribute controlled substances, and conspiracy to possess a firearm in furtherance of drug trafficking. (*See generally* ECF No. 1000.) In connection with the investigation of these crimes, law enforcement sought a warrant authorizing the search of several Instagram accounts, including, for the period of "January

---

[1] Burnette has pleaded guilty and has been sentenced.

1, 2018 through the present[,]" "the Instagram account associated with the username 'moneyj17_', believed to belong to Devin MITCHELL ('SUBJECT ACCOUNT 5')." (*See* ECF No. 890-1 at 4–5.) The warrant was authorized on October 14, 2021 by United States Magistrate Judge Thomas DiGirolamo. (*Id.* at 3.)

With respect to the search of the Instagram accounts, the affiant described his training and experience and explained that "individuals involved in drug trafficking and criminal gangs frequently use social media platforms like Instagram to further their illegal activities" and that "the social media accounts belonging to individuals involved in drug trafficking and criminal gangs frequently contain evidence of their criminal activities." (ECF No. 890-1 at 7.) With respect to Mitchell and Subject Account 5 specifically, the affidavit explained that Subject Account 5 participated in chats "labeled '#FreeTheL', 'Free The Fuckin L', and 'the Solid Ones'" and that "[t]he discussions on the chats included the acquisition of firearms, stalking rival gang members, and organizing acts of violence, some of which described *infra*, are Overt Acts in the Second Superseding Indictment." (*Id.* at 10.)

The affidavit also detailed certain specific communications attributed to Subject Account 5. For instance, in the "#FreetheL" chat, in which Subject Account 5 participated, members identified Corey Moseley as a "rat" and the group chat ended when he was killed on December 31, 2018. (*Id.* at 11.) In another conversation, after a non-fatal shooting on February 24, 2019, "SUBJECT ACCOUNT 3 (BURNETTE) stated that the victim had three firearms aimed at him; SUBJECT ACCOUNT 5 (MITCHELL) stated that he fired but the gun jammed." (*Id.* at 12–13.) In addition, in the "Solid Ones" group chat, Rashaud Nesmith texted the group on March 20, 2019, "Who spending 5 onna ratchet?? And I got a 9 for 300." (*Id.* at 13.) The affiant explained that "[b]ased on [his] training and experience, [he] believe[s] that NESMITH contacted the group to

see who was interested in buying a firearm" and that he "told that group he had a .9mm firearm for sale for $300." (*Id.*) Then "SUBJECT ACCOUNT 3 (BURNETTE) responded, 'A 9 for 300 . . . Dev grab that' to which SUBJECT ACCOUNT 5 (MITCHELL) asked, 'Where it's at?'" (*Id.*) The affiant explained that "[he] believe[s] that SUBJECT ACCOUNT 3 (BURNETTE) confirmed that the .9mm firearm is $300 . . . and inst[r]ucted SUBJECT ACCOUNT 5 (MITCHELL), to obtain the firearm." (*Id.*)

## *II. Analysis*

"A warrant is constitutionally sound when issued by a neutral magistrate and supported by probable cause." *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011). The "probable cause determination is a 'practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Because probable cause is evaluated through a totality-of-the-circumstances analysis rooted in common sense, [reviewing courts] must accord great deference to the magistrate's assessment of the facts presented to him." *Id.* (citations and quotations omitted).

Furthermore, there must be some nexus between the suspected crime and the place to be searched—"a substantial likelihood that evidence of a crime will be found in a particular place." *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011). Such nexus may be shown by "the nature of the item and the normal inferences of where one would likely keep such evidence." *Id.* (quoting *United States v. Richardson*, 607 F.3d 357, 371 (4th Cir. 2010)). "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

3

Mitchell argues that the affidavit did not provide probable cause to search Subject Account 5. The Court concludes that there was substantial basis in the record to support the Magistrate Judge's decision to issue the warrant. The affiant described the ways in which individuals involved in drug trafficking and gangs use social media, and explained that Subject Account 5 participated in Instagram group chats that discussed the "acquisition of firearms, stalking rival gang members, and organizing acts of violence" and provided examples of such communications. *(See generally* ECF No. 890-1.) This is sufficient to support the Magistrate Judge's finding of probable cause. *See, e.g., United States v. Fisher*, Crim. No. RDB-14-413, 2015 WL 1862329, at *2 (D. Md. Apr. 22, 2015) (concluding that the affiant's attestation that drug dealers use cell phones to conduct their business combined with evidence of the defendant's alleged heroin dealing in the affidavit provided sufficient probable cause, and that "[c]ell phones . . . are acknowledged tools of drug-traffickers").[2]

Mitchell also argues that the search was overbroad. The affiant explains that the identified Instagram "chats spanned from approximately September 2018 to June 2019" and explained that CCC was "believed to be responsible for over 18 homicides and other acts of violence spanning from 2015 to 2020" but the warrant sought data from "January 1, 2018, through the present" (and the warrant was signed in October 2021). (ECF No. 890-1 at 3–4, 8, 10.) The warrant was therefore arguably overbroad in its timeframe.

However, evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant" is not subject to the exclusionary rule unless certain circumstances are present. *United States v. Leon*, 468 U.S. 897, 922 (1984). For instance, evidence is subject to the

---

[2] Mitchell also argues that law enforcement did not have probable cause to tie the username moneyj17_ to him. However, at issue here is not whether Mitchell used the moneyj17_ username, but rather whether there was probable cause to search the Instagram data associated with that username. As discussed, there was such probable cause.

exclusionary rule where the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" or where a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923 (citations and quotations omitted). The Court finds that, even assuming that the warrant was overbroad (or not supported by probable cause), *Leon*'s good faith exception applies and suppression is not warranted. *See United States v. Chavez*, 423 F. Supp. 3d 194, 208 (W.D.N.C. 2019) (explaining that "applying the Fourth Amendment to social media accounts is a relatively unexplored area of law with nuances that have yet to be discovered" and that "[c]ourts should not punish law enforcement officers who are on the frontiers of new technology simply because they are at the beginning of a learning curve and have not yet been apprised of the preferences of courts on novel questions" (citation and quotations omitted)).

### III.   Conclusion

Accordingly, it is ORDERED that:

1. Mitchell's Motion (ECF No. 1099) is GRANTED to the extent that he seeks to join Burnette's Motion; and

2. Mitchell's Motion (ECF No. 1099) is DENIED to the extent that he seeks to suppress evidence.

5

DATED this 31 day of May, 2023.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge